

**FILED**

**May 29, 2018**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 8:45 A.M.**

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD
## (HEARD APRIL 26, 2018 AT KNOXVILLE)

| | | |
|---|---|---|
| Duwan Duignan | ) | Docket No.   2017-03-0080 |
| | ) | |
| v. | ) | State File No. 42192-2016 |
| | ) | |
| Stowers Machinery Corporation, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Pamela B. Johnson, Judge | ) | |

### Reversed and Remanded—Filed May 29, 2018

The employee, a delivery driver, injured his back when he picked up a box in the course of his employment.  The employer accepted the injury as compensable and provided light duty work until the employee reached maximum medical improvement.  The sole issue at trial was whether the employee was entitled to permanent total disability benefits or permanent partial disability benefits.  The trial court concluded the employee was permanently totally disabled and ordered the employer to pay benefits accordingly.  The employer has appealed.  We reverse the trial court's decision and remand the case for a determination of the employee's permanent partial disability.

Presiding Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board in which Judge David F. Hensley joined.  Judge Timothy W. Conner dissented.

G. Gerard Jabaley, Knoxville, Tennessee, for the employer-appellant, Stowers Machinery Corporation

Link A. Gibbons, Morristown, Tennessee, for the employee-appellee, Duwan Duignan

### Factual and Procedural Background

The facts of this case are largely undisputed.  Duwan Duignan ("Employee"), a sixty-one-year-old resident of Loudon County, Tennessee, was employed by Stowers Machinery Corporation ("Employer"), a heavy equipment dealer for Caterpillar in Knoxville.  He is a high school graduate and worked for Employer for some thirty-seven years before retiring in 2016.

1

While performing his job duties as a parts delivery driver on June 1, 2016, Employee lifted a box and felt "pressure" in his low back. Thinking nothing of it, he completed his shift and went home. When he woke up the following day, he noticed some discomfort but believed it would improve throughout the day. He completed his shift and, upon arriving home, informed his wife of his complaints. He also contacted his supervisor and was offered medical care.

Employee was provided a panel of physicians from which he selected Dr. Patrick Bolt as his authorized doctor. He saw Dr. Bolt, an orthopedic surgeon, on July 27, 2016, with complaints of low back pain radiating into his right leg. Dr. Bolt diagnosed a herniated disc and provided conservative care, including epidural steroid injections. Employee continued to experience pain in his low back, although by September 2016, the radiation of pain into his leg had improved. Dr. Bolt believed Employee was not a surgical candidate and ordered a Functional Capacity Evaluation ("FCE") to determine what, if any, work restrictions were appropriate. Dr. Bolt reviewed the results of the FCE and adopted the restrictions recommended by that evaluation as Employee's permanent work restrictions. He placed Employee at maximum medical improvement with a seven percent permanent anatomical impairment rating.[1]

Employer had provided light duty work during Employee's recovery period, and it allowed him to continue to perform that work through October 2016, at which time he retired. He did not seek employment elsewhere.

Dr. Bolt testified about Employee's use of a cane, which he had begun using almost immediately after his injury. According to Dr. Bolt, the use of a cane by someone with low back pain is not indicated by the medical literature and he never recommended it. When questioned about whether using a cane was appropriate, Dr. Bolt stated, "I'm going to be very specific about that. I would not recommend use of a cane for a patient with back pain." He went on to state that the cane

> literally is a crutch. That's what we call it. When something becomes a crutch, it become[s] something that you rely on to get by. And I continue to maintain that that is not an ideal situation for someone with back pain. And it is something that he selected, not something that was given to him by his practitioners.

Employee obtained an evaluation from Dr. William Kennedy, also an orthopedic surgeon, who agreed with Dr. Bolt that Employee was not a surgical candidate. He also

---

[1] Dr. Bolt initially assigned a six percent anatomical impairment rating. However, during his deposition, he acknowledged that he had inadvertently relied on the portion of the AMA Guides related to cervical injuries rather than lumbar injuries and that, when utilizing the correct section of the Guides, Employee's anatomical impairment was actually seven percent rather than six percent.

agreed with Dr. Bolt's treatment and conclusions, though he assigned a nine percent anatomical impairment rating and imposed restrictions more severe than those imposed by Bolt. Dr. Kennedy described these restrictions as prophylactic rather than determined by Employee's measured abilities. He acknowledged that he assigns similar restrictions to everyone he evaluates with this type of injury without regard to the individual's age, work environment, fitness level, or other factors. Importantly, he also agreed that there was not "anything within the restrictions [he] outlined that [he] would say would absolutely prevent [Employee] from being gainfully employed."

The parties also obtained the opinions of vocational experts regarding the extent of Employee's vocational disability. Employee retained Michael Galloway who, after interviewing Employee over the phone and reviewing his medical records, Dr. Kennedy's report, and the depositions of the physicians, concluded that he was 75% vocationally disabled if the court adopted Dr. Bolt's restrictions. If the court accepted the restrictions of Dr. Kennedy, Mr. Galloway concluded Employee was totally disabled.

Employer selected Anthony Enoch to perform a vocational assessment. When considering Dr. Bolt's restrictions, Mr. Enoch identified ten job classifications that would be suitable for Employee. He was initially unable to identify any positions when applying Dr. Kennedy's restrictions. However, after performing a labor market survey of the area where Employee resides, Mr. Enoch identified jobs which would meet Employee's vocational limitations, and he concluded Employee was capable of gainful employment in the Knoxville area.

After Employee was placed at maximum medical improvement, the parties agreed he could not return to work in his position as a parts delivery driver. However, Employer identified an available warehouse position that could be modified to accommodate Employee's restrictions. Although the job description for the position exceeded the weight limits of the work restrictions assigned by Dr. Bolt, Employer offered to provide lifting devices and to allow Employee to seek co-workers' assistance when needed. Employee expressed concern about being required to walk and stand continuously, and Employer agreed to allow him to sit down when needed, within reason.

However, the parties were unable to agree regarding Employee's use of a cane, as it was not recommended or prescribed by Dr. Bolt. Employee refused to accept the offered position unless he could use his cane. Employer refused to allow Employee to use the cane in the warehouse because it was a hazard to others and because he needed both hands to perform his duties. Employee declined the offer to work in the warehouse, and his employment ended October 31, 2016.

Following a trial, the court concluded that Dr. Kennedy's opinion was insufficient to rebut the statutory presumption of correctness afforded to Dr. Bolt's opinion with respect to anatomical impairment. In addition to accepting Dr. Bolt's seven percent

3

impairment rating as the applicable anatomical impairment, the court also adopted Dr. Bolt's restrictions, which were those set out in the FCE. Accepting Mr. Galloway's opinion with respect to vocational disability and taking into consideration Employee's testimony regarding his ability to work and his reservations concerning the accommodations offered, the court concluded he was permanently totally disabled. Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2017). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2017).

## Analysis

### A.

Initially, we note that Employer cites Tennessee Code Annotated section § 50-6-217(a)(3) (2016) (repealed 2017) in support of its argument that the trial court's decision should be reversed. Section 50-6-217(a)(3) authorized us to reverse or modify a trial court's decision if the rights of a party were prejudiced because the findings of the trial judge were "not supported by evidence that is both substantial and material in light of the entire record." However, as we have observed on numerous occasions, this code section was repealed effective May 9, 2017.[2] Consequently, as noted above, the standard we

---

[2] *See, e.g.*, *Ogden v. McMinnville Tool & Die*, No. 2016-05-1093, 2018 TN Wrk. Comp. App. Bd. LEXIS 14, at *9-10 (Tenn. Workers' Comp. App. Bd. May 7, 2018); *Edwards v. Fred's Pharmacy*, No. 2017-06-0526, 2018 TN Wrk. Comp. App. Bd. LEXIS 9, at *5-6 (Tenn. Workers' Comp. App. Bd. Feb. 14, 2018); *Bowlin v. Servall, LLC*, No. 2017-07-0224, 2018 TN Wrk. Comp. App. Bd. LEXIS 6, at *6-7 (Tenn. Workers' Comp. App. Bd. Feb. 8, 2018); *Thompson v. Comcast Corp.*, No. 2017-05-0639, 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *12-13 (Tenn. Workers' Comp. App. Bd. Jan. 30, 2018); *Baker v.*

apply in reviewing the trial court's decision presumes that the trial judge's factual findings are correct unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-239(c)(7).

**B.**

Turning to the merits of this appeal, our task is to determine whether the evidence preponderates against the trial court's finding that Employee is permanently totally disabled. Employer argues that the trial court's decision on this point should be reversed because Employee is able to work at an occupation that provides an income. Employer points out that: (1) it offered Employee a position with reasonable accommodations that he refused to attempt; (2) Employee was able to work at a light duty position before reaching maximum medical improvement; (3) Employee had not been prescribed the use of a cane he insists on using; and (4) both vocational experts believed Employee could work under certain circumstances.

Both before and after the Reform Act of 2013, four distinct types of disability exist for which an employee may be awarded benefits, each of which is designed to address a different circumstance: temporary partial disability,[3] temporary total disability,[4] permanent partial disability,[5] and permanent total disability.[6] This case involves whether Employee is permanently partially disabled or permanently totally disabled.

---

*Electrolux*, No. 2017-06-0070, 2017 TN Wrk. Comp. App. Bd. LEXIS 65, at *5-6 (Tenn. Workers' Comp. App. Bd. Oct. 20, 2017); *Butler v. AAA Cooper Transportation*, No. 2016-07-0459, 2017 TN Wrk. Comp. App. Bd. LEXIS 54, at *5-6 (Tenn. Workers' Comp. App. Bd. Sept. 12, 2017); *Glasgow v. 31-W Insulation Co., Inc.*, No. 2017-05-0225, 2017 TN Wrk. Comp. App. Bd. LEXIS 51, at *11-12 (Tenn. Workers' Comp. App. Bd. Sept. 6, 2017).

[3] "Temporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005).

[4] "Temporary total disability is addressed to 'that period of time the employee's injury prevents him [or her] from working, and during which he [or she] is recuperating as far as the nature of his [or her] injury permits.'" *Stem v. Thompson Servs.*, No. M2010-01566-WC-R3-WC, 2011 Tenn. LEXIS 742, at *22 (Tenn. Workers' Comp. Panel July 26, 2011).

[5] Permanent partial disability occurs when an employee suffers an injury, the effects of which are deemed to be permanent, but the employee is still able to earn an income. *See* Tenn. Code Ann. § 50-6-207(3) (2017).

[6] Permanent total disability occurs when an injury not otherwise addressed by statute "totally incapacitates the employee from working at an occupation that brings the employee an income." Tenn. Code Ann. § 50-6-207(4)(B) (2017).

5

An employee may be found to be permanently totally disabled "[w]hen an injury not otherwise specifically provided for in this chapter totally incapacitates the employee from working at an occupation that brings the employee an income." Tenn. Code Ann. § 50-6-207(4)(B) (2017). Thus, the burden is on the employee seeking permanent total disability benefits to establish that he or she is unable to work at any job that would produce an income in the open labor market. *See Prost v. City of Clarksville*, 688 S.W.2d 425, 427 (Tenn. 1985).

In assessing whether an employee is permanently totally disabled, courts consider a number of factors to ascertain "a complete picture of an individual's ability to return to gainful employment." *Hubble v. Dyer Nursing Home*, 188 S.W.3d 525, 535 (Tenn. 2006). These factors include the employee's skills, education, age, training, and "job opportunities in the immediate and surrounding communities, and the availability of work suited for an individual with that particular disability." *Id.* at 535-36. Also, "an employee's own assessment of his or her overall physical condition, including the ability or inability to return to gainful employment, is competent testimony that should be considered." *Cleek v. Wal-Mart Stores, Inc.*, 19 S.W.3d 770, 774 (Tenn. 2000). Guided by these principles, we find that the evidence preponderates against the trial court's finding that Employee is permanently totally disabled.

First, Employee has not sought any employment to determine whether any jobs are available to him in the open labor market. He readily acknowledged that he has not "attempted to find work in any capacity . . . not looked at newspaper ads, went online, made no effort whatsoever to see if there was jobs [he] thought [he] could perform." When asked why he believed he was no longer able to work, he testified "I just listen to my body . . . I don't want [the back injury] to be any worse than what it already is." However, an employee's decision to retire because he or she fears re-injury has been determined to be "unreasonable within the framework of [the statute]. To hold otherwise would essentially nullify the statute by allowing any employee to avoid [statutory limitations on his or her recovery of benefits] by refusing employment based upon an unfounded fear of re-injury." *Dowd v. Cassens Transp. Co.*, M2005-2632-WC-R3-CV, 2007 Tenn. LEXIS 237, at *16 (Tenn. Workers' Comp. Panel March 8, 2007).[7] Put simply, Employee made no effort to determine his options in the open labor market consistent with his restrictions.

Second, not only did Employee fail to make any effort to look for jobs he could perform in the open labor market, he refused to attempt the accommodated warehouse position offered by Employer. Employee's refusal to attempt this position was based, in

---

[7] *See also Brock v. Hewlett-Packard Co.*, No. M2014-01889-SC-R3-WC, 2015 Tenn. LEXIS 766, at *27 (Tenn. Workers' Comp. Panel Sept. 23, 2015) (Where the employee presented no vocational proof that she was unable to work in the general labor market and acknowledged that she had not sought employment except as required to receive unemployment benefits, the trial court erred in finding the employee permanently totally disabled.).

part, on the fact that he had worked that job years earlier and did not believe Employer would be able to craft accommodations that would allow him to work within his restrictions.

However, whether Employee would have been able to perform the offered positon with the accommodations Employer indicated it was willing to make is unknown. Although Employee expressed concerns about whether he would be able to find a co-worker to assist him if he needed one or use an offered lifting device, the record is clear that Employee had not held the warehouse position in approximately twenty years. In his previous work in the warehouse, there was no need to provide any accommodations. There is no dispute that the job, unmodified, was outside Employee's restrictions. However, because Employee refused to attempt the job as modified, we have no way of knowing whether Employer would have been able to provide a position within his restrictions, and a finding of permanent total disability would require us to speculate in that regard. *See Iacono v. Saturn Corp.*, No. M2008-00139-WC-R3-WC, 2009 Tenn. LEXIS 45, at * 20 (Tenn. Workers' Comp. Panel Mar. 12, 2009) ("Because Employee foreclosed the possibility of allowing Employer the opportunity to return Employee to work, we are not able to determine whether Employee could of had a meaningful return to work.").

Third, Employee's refusal to attempt the warehouse position offered by Employer was also based on his refusal to work without a cane, something Employer would not allow because of the hazard it created to others and because Employee needed both hands to do the job. However, whether Employee's refusal to attempt the warehouse job without his cane was reasonable must be considered in light of Dr. Bolt's testimony that he "would not recommend use of a cane for a patient with back pain." Indeed, according to Dr. Bolt, the authorized treating doctor, the cane was "literally a crutch" and was "not something that was given to him by his practitioners." Even Employee's own physician, Dr. Kennedy, testified that, while he felt Employee should be allowed to use the cane if it helped his back pain, a cane was not part of the normal treatment protocol for a person with back pain. Thus, it was Employee's choice to use a cane, and no physician prescribed or recommended the cane. In fact, the authorized physician specifically advised against it.

The Special Workers' Compensation Appeals Panel has addressed an employer's obligation to observe restrictions other than the ones assigned by the treating physician as follows:

> The Tennessee Supreme Court has emphasized two factors in determining the reasonableness of an employer's offer of re-employment. First is the ability of the employee to perform the offered employment. Second is the willingness of the employer to accommodate the work restrictions *imposed by the employee's attending physician. Where, however, the employee has*

7

*refused to return to work because the employer has denied accommodations beyond the work restrictions medically recommended, the employee's refusal has been determined to be unreasonable* and the [employee's recovery has been limited pursuant to statute].

*Dowd*, 2007 Tenn. LEXIS 237, at \*14 (emphasis added) (citations omitted). Employer's refusal to permit Employee to use his cane while working in the warehouse when no physician recommended or endorsed the use of the cane does not diminish the reasonableness of Employer's offer of modified employment.

Fourth, Employee's authorized physician, Dr. Bolt, assigned an anatomical impairment rating of seven percent and imposed certain work restrictions. Employee's vocational expert, whose opinion the trial court accepted, concluded that, when considering Dr. Bolt's restrictions, Employee's vocational disability was approximately 75%. Employer's vocational expert, Mr. Enoch, agreed Employee was capable of gainful employment in the greater Knoxville area. Thus, the expert vocational proof presented at trial supports Employer's argument that Employee, although suffering from a significant vocational impairment, is able to work.

Fifth, neither Dr. Bolt nor Dr. Kennedy indicated Employee was unable to work. To the contrary, Employee's own medical expert, Dr. Kennedy, acknowledged that Employee's restrictions would not preclude him from being gainfully employed.

Considering the totality of the circumstances, we cannot conclude that Employee has established by a preponderance of the evidence that he is unable to work at a job that brings him an income, the standard for assessing permanent total disability under section 50-6-207(4)(B). He turned down one position with accommodations that would have provided an income and, by his own admission, has made no attempt to find another one within his restrictions. Moreover, both the medical and vocational experts opined that Employee is able to work at a job that brings him an income. We conclude Employee is not permanently totally disabled.[8]

---

[8] In arguing that the trial court's decision should be upheld, the dissent relies on *Pricinsky v. Premier Manufacturing Support Services*, No. M2009-00207-WC-R3-WC, 2010 Tenn. LEXIS 877 (Tenn. Workers' Comp. Panel Sept. 23, 2010). In that case, the employee suffered an injury and was able to return to work in a modified position. *Id.* at \*3-4. After suffering a second injury, she sought reconsideration of the first injury and received permanent total disability benefits based on the first injury. *Id.* at \*4-5. The Panel affirmed the trial court, noting that the employer's willingness and ability to accommodate the employee's restrictions were what enabled the employee to return to work between her first and second injuries. *Id.* at \*15. However, in this case, Employee has not established that Employer's offer to accommodate his restrictions is the only factor that would permit him to return to work. To the contrary, both the medical and vocational experts opined that Employee is able to work at a job that brings him an income.

Before concluding, we note that the dissent points out that a trial court's factual findings are entitled to deference and that it is not the role of an appellate court to substitute its judgment for that of the trial court with respect to factual determinations and the weight to be given witness testimony. *See Loudermilk v. NHC Home Care of Knoxville*, No. E2004-02990-WC-R3-CV, 2005 Tenn. LEXIS 638, at *6-7 (Tenn. Workers' Comp. Panel Aug. 1, 2005). We agree, but would add that it *is* our role to ensure a party proves its case by the standards set by the legislature. Here, we do not believe that was done.

## Conclusion

For the foregoing reasons, we hold that the evidence preponderates against the trial court's decision. Accordingly, the trial court's decision is reversed and the case is remanded for a determination of the amount of Employee's permanent partial disability. Costs on appeal are taxed to Employee.

FILED

May 29, 2018

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 8:45 A.M.



**TENNESSEE BUREAU OF WORKERS' COMPENSATION
WORKERS' COMPENSATION APPEALS BOARD
(HEARD APRIL 26, 2018 AT KNOXVILLE)**

| | | |
|---|---|---|
| Duwan Duignan | ) | Docket No. 2017-03-0080 |
| | ) | |
| v. | ) | State File No. 42192-2016 |
| | ) | |
| Stowers Machinery Corporation, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Pamela B. Johnson, Judge | ) | |

---

**Dissenting Opinion – Filed May 29, 2018**

---

Timothy W. Conner, J., dissenting.

I respectfully dissent from the majority's conclusion that the trial court erred in finding Employee permanently totally disabled. Tennessee's workers' compensation law provides a standard of proof for evaluating claims of permanent total disability different from the standard for evaluating claims of permanent partial disability:

> When an injury not otherwise specifically provided for in this chapter *totally incapacitates the employee from working at an occupation that brings the employee an income*, the employee shall be considered totally disabled . . . .

Tenn. Code Ann. § 50-6-207(4)(B) (2017) (emphasis added). The Tennessee Supreme Court has explained that in analyzing a claim of permanent total disability, "the statute contemplates employment in the open labor market and not a return to the employee's previous position." *Prost v. City of Clarksville*, 688 S.W.2d 425, 427 (Tenn. 1985). Thus, in a case where an employee claims permanent total disability caused by a work injury, the "meaningful return to work" concept considered in cases of permanent partial disability is not applicable. Instead, the employee must prove, by a preponderance of the evidence, that the work injury totally incapacitated the employee from obtaining work in the open labor market that brings the employee an income. In my opinion, the majority places too much emphasis on the reasonableness of Employer in offering Employee an accommodated position and the purported unreasonableness of Employee in declining Employer's offer to return to work in an accommodated position.

1

This issue was addressed by the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel under pre-reform law.[1]  In *Pricinsky v. Premier Manufacturing Support Services*, No. M2009-00207-WC-R3-WC, 2010 Tenn. LEXIS 877 (Tenn. Workers' Comp. Panel Sept. 23, 2010), the employee sustained a compensable injury to her neck and right arm.  *Id.* at *3.  Her employer offered her an accommodated position, and she returned to work for over a year.  *Id.* at *4.  Thereafter, the employee sustained a second work-related injury to her left shoulder and arm.  *Id.*  Her employer was unable to offer her an accommodated position after the second injury, and she ultimately settled her second claim for permanent partial disability.  *Id.*  She then filed an action for reconsideration of the first claim, arguing that she was permanently totally disabled as a result of the first work injury.  *Id.*

At trial, the employee in *Pricinsky* acknowledged the employer had accommodated her permanent restrictions following the first injury, but testified she did not believe she was capable of obtaining or holding any job.  *Id.* at *5.  She admitted on cross examination that she would still be working for her employer in the accommodated position had the later injury not occurred.  *Id.*  Nevertheless, based on the employee's age, education, job history, lack of transferable job skills, and permanent work restrictions, the trial court concluded the first work injury had rendered the employee permanently totally disabled. *Id.* at *8.

On appeal, the Panel in *Pricinsky* affirmed the determination that the employee was permanently totally disabled as a result of her first injury.  *Id.* at *22.  In so holding, the Panel noted,

> [t]he restrictions on her activities, upon which the finding of permanent total disability was based, were the same as they had been at the time she settled her prior workers' compensation claim.  It is only because of the accommodations made by [her employer] that [the employee] was able to work.

*Id.* at *15.  Moreover, the Panel concluded that "employment after injury is a factor to be considered in determining whether an employee is permanently and totally disabled, but that fact is to be weighed in light of all other considerations."  *Id.* at *17 (quoting *Atkinson v. Signage, Inc.*, No. M2002-01491-WC-R3-CV, 2003 Tenn. LEXIS 703, at *5 (Tenn. Workers' Comp. Panel Aug. 4, 2003) (despite employee's return to work in an accommodated position, trial court's finding of permanent total disability was affirmed)).

---

[1] The quoted language in Tennessee Code Annotated section 50-6-207(4)(B) was not changed by the 2013 Workers' Compensation Reform Act or any subsequent amendment.  In fact, the language "totally incapacitates the employe[e] from working at an occupation which brings him an income" was in the original version of the Tennessee Workers' Compensation Act passed in 1919. *See* 1919 Tenn. Pub. Acts 385, sec. 28(e).

The ultimate question in *Pricinsky* was whether the employee was employable in the open labor market. *Id.* at *19. On that issue, the Panel concluded, "[i]n view of the deference we must give to the trial court with regard to credibility, we are unable to find that the evidence preponderates against the trial court's findings that [the employee] was permanently and totally disabled as a result of her 2002 injury." *Id.* at *21; *see also Marshall v. Sverdrup Techs.*, No. M2000-02951-WC-R3-CV, 2002 Tenn. LEXIS 222, at *7 (Tenn. Workers' Comp. Panel May 9, 2002) (Although the employer was willing to accommodate the injured employee's restrictions, the trial court's finding of permanent total disability was affirmed because "[e]mployment after injury is only one factor to be considered in determining whether an employee is permanently and totally disabled" and "when it is clear that an employee is . . . not employable in the open job market, a finding of permanent total disability is warranted.").

As noted above, we are required to give "considerable deference" to the trial court's findings of witness credibility and the "assessment of the weight to be given to that testimony." *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008). Moreover, a trial judge "has the discretion to determine which testimony to accept when presented with conflicting expert opinions." *Payne v. UPS*, No. M2013-02363-SC-R3-WC, 2014 Tenn. LEXIS 1112, at *18 (Tenn. Workers' Comp. Panel Dec. 30, 2014).

In the present case, the trial court noted Employee was sixty-one years of age at the time of trial. He has a high school diploma and had worked for Employer for over thirty-seven years. He had previously worked in Employer's warehouse and had also delivered heavy equipment. Employee's vocational expert testified his previous work fell within the "heavy" physical demand category.

Following the work injury, Employer made considerable efforts to return Employee to work in an accommodated position in the warehouse, but Employer would not allow Employee to use his cane in this position and Employee did not believe he could return to work without his cane. Moreover, although Employer asserted it would allow Employee to sit during his shift "within reason," there was little testimony as to what this accommodation would entail.[2] According to the trial court, Employee "believed he could not work as a warehouse worker even with accommodation." Employee testified at trial that he continued to experience significant low back pain with occasional pain down his right leg. He also testified he took daily over-the-counter pain medication. These findings and observations regarding Employee's testimony are entitled to considerable deference on appeal.

---

[2] With regard to another's supervisor's discussion with Employee concerning his ability to sit during his shift, Employer's representative testified, "[a]s far as being able to sit down, . . . we could accommodate that. I don't specifically remember the comment about how you can't sit down for 23 breaks a day. But I do remember him saying within reason. No employee is allowed to do 24 or -5 breaks a day."

3

Moreover, the trial court carefully weighed the testimony of each vocational expert and the information on which each expert relied. Employee's vocational expert, Michael Galloway, explained why the limitations and deficits described in the functional capacity evaluation, when considered in light of other relevant factors, rendered Employee 100% vocationally disabled. Specifically, in his report, Mr. Galloway stated:

> [I]f considering the actual performance of [Employee] as noted in the body of the FCE[,] which is a hybrid of sedentary to low end medium physical demands with lifting and reduced carrying, pushing, and pulling in addition to advanced age in terms of employment and resulting in no transferable skills, it is more likely than not that he will have a 100% vocational disability.

At trial, Mr. Galloway opined Employee would be "unable to return to any of his past work [for Employer]," regardless of whether he considered the restrictions of Dr. Bolt or Dr. Kennedy. He also testified that limitations reflected in the functional capacity evaluation were similar in certain respects to the restrictions assigned by Dr. Kennedy. When considering Dr. Kennedy's restrictions, Mr. Galloway again concluded Employee was 100% vocationally disabled.

After observing Employee testify, the trial court determined that "[Employee's] testimony supports a conclusion that he is unable at this time to work at any occupation." Moreover, after reviewing the testimony of each vocational expert, the trial court concluded that the expert testimony presented by Employee's vocational expert "was more persuasive and helpful to the permanent disability analysis." Finally, after considering Employee's testimony as to why he did not accept Employer's offer of an accommodated position, the trial court found that Employee's refusal was "reasonable based on his personal knowledge of the job responsibilities and requirements." Again, these findings are entitled to considerable deference. It is not the role of an appellate court to substitute its judgment for that of the trial court with respect to factual determinations and the weight to be given witness testimony. *Loudermilk v. NHC Home Care of Knoxville*, No. E2004-02990-WC-R3-CV, 2005 Tenn. LEXIS 638, at *6-7 (Tenn. Workers' Comp. Panel Aug. 1, 2005).

In considering the totality of the circumstances, including Employee's age, education, work experience, the results of the functional capacity evaluation, and the permanent restrictions, as well as the circumstances surrounding Employer's job offer with accommodations, the trial court determined Employee was unable to find employment in the open labor market that would earn Employee an income. I find nothing in this record to conclude the trial court erred in any of these findings or that the preponderance of the evidence fails to support the trial court's determinations. I would therefore affirm.

4

**FILED**

**May 29, 2018**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 8:45 A.M.**



**TENNESSEE BUREAU OF WORKERS' COMPENSATION
WORKERS' COMPENSATION APPEALS BOARD**

| | |
|---|---|
| Duwan Duignan | ) Docket No. 2017-03-0080 |
| | ) |
| v. | ) State File No. 42192-2016 |
| | ) |
| Stowers Machinery Corporation, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Pamela B. Johnson, Judge | ) |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 29th day of May, 2018.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Sent to: |
|---|---|---|---|---|---|---|
| Link A. Gibbons | | | | | X | link@linkgibbonslaw.com |
| G. Gerard Jabaley | | | | | X | gjabaley@wimberlylawson.com |
| Pamela B. Johnson, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov